AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☒ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
06/12/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____AP_____ DEPUTY



FILED
CLERK, U.S. DISTRICT COURT
06/12/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KC_____ DEPUTY

UNITED STATES OF AMERICA,

v.

TOMMY RAY SPAULDING,

Defendant.

Case No.  5:25-mj-00419

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On February 26, 2025, in the county of San Bernardino in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) | See attached affidavit |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

USPIS Task Force Officer, Zachary Sumpter
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 12, 2025

Judge's signature

City and state: Riverside, California

Honorable Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sean D. Peterson

**AFFIDAVIT**

I, Zachary Sumpter, being duly sworn, declare and state as follows:

I.   **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Tommy Ray Spaulding ("SPAULDING") for a violation of 21 U.S.C §§ 841(a)(1), (b)(1)(A)(ii) (distribution of 5 kilograms or more of Cocaine), on or about February 26, 2025.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and criminal complaint, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

II.   **BACKGROUND OF AFFIANT**

3. I am a Task Force Officer ("TFO") with the United States Postal Inspection Service ("USPIS"), and have been so employed since November 2021. I am currently assigned as a TFO to the Contraband Interdiction and Investigations South Team of the Los Angeles Division, which is responsible for investigating drug trafficking violations involving the United States Mail.

As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.  Before being assigned as a TFO with the USPIS, I worked patrol as a full-time sworn law enforcement officer with the Chino Police Department ("CPD").  I have been a sworn law enforcement officer since August 2013.  I am a Police Officer within the meaning of Section 830.1 of the California Penal Code.

4.   I have received training and have experience investigating violations of state and federal narcotics and money laundering laws, including, but not limited to, Title 21, United States Code, Sections 841, 846, 952, 959, and 963, and Title 18, United States Code, Section 1956(a).  I am familiar with various electronic surveillance methods, techniques, and investigations, including state and federal wiretap investigations and the debriefing of informants and witnesses, as well as others who have knowledge of the manufacturing, distribution, transportation, storage, and importation of controlled substances and the laundering of drug proceeds.

5.   I have participated in many aspects of drug trafficking investigations, including investigations into the smuggling of illegal drugs, money laundering, and extortion concerning drug trafficking.  I am familiar with narcotics traffickers' methods of operation, including the manufacturing,

storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. I am also familiar how narcotics traffickers transport and distribute narcotics in areas they control. I am familiar with how drug traffickers use counter-surveillance techniques to avoid detection by law enforcement. I also know that drug traffickers often communicate with their drug-trafficking associates through cellular telephones. I am aware that more sophisticated drug trafficking networks now use the dark web, email, Blackberry devices, Voice Over Internet Protocol, video chat, internet messaging services, and social networking sites to communicate with one another. During drug-related communications, traffickers often use coded or cryptic language to disguise the drug-related nature of their conversations.

### III. SUMMARY OF PROBABLE CAUSE

6. Based on fingerprint analysis, surveillance video, and IP tracking data for a digital device that tracked a package, on February 26, 2025, SPAULDING mailed a package containing approximately 6,016.3 grams of pure Cocaine from the post office in Rancho Cucamonga, California, to Lincoln, Nebraska.

7. On February 25, 2025, SPAULDING is believed to have sent approximately $47,500 in cash via the mail from a post office in Nebraska to an address in Calexico, California, which is an address associated with a suspected drug trafficker.

8. On May 17, 2025, SPAULDING mailed three separate packages from a post office in El Centro, California, to

Lincoln, Nebraska. Those packages contained a total of approximately 3,973 grams of Fentanyl, 2,006.0 grams of Cocaine, and 7,291.2 grams of Methamphetamine.

9. After reviewing USPS business records, I learned that between September 9, 2024, and February 26, 2025, sixteen parcels were mailed to Lincoln, Nebraska, from either San Bernardino County or Imperial County. Based on USPS business records, the postage for the packages were all paid for in cash. These parcels had similarity in shape, weight, and seize. The sixteen parcels were sent to the same address as parcel containing approximately 6,016.3 grams of pure Cocaine--4030 B Street, Lincoln, Nebraska.

### IV.   STATEMENT OF PROBABLE CAUSE

#### A.   Inspectors Seize 6016.3 Grams of Cocaine From A Parcel Later Determined To Have Been Sent By SPAULDING

10. The USPIS is investigating a Drug Trafficking Organization ("DTO") that is mailing parcels containing illicit narcotics from California to other locations across the United States, including Lincoln, Nebraska.

11. Between February 28, 2025, and March 3, 2025, at the City of Industry USPS Processing and Distribution Center in Los Angeles County, California, I and other law enforcement officers identified several parcels as meeting some of the following criteria common to packages containing contraband, including that they were excessively taped, contained handwritten labels, lacked business account numbers, and, according to law

enforcement databases, contained sender and recipient names that were not associated with their respective listed addresses.

12. Specifically, USPS Priority Mail Express parcel bearing tracking number EI 959 578 014 US (hereinafter referred to as "SUBJECT PARCEL 1") was a brown colored, large-size Ready Post cardboard box. SUBJECT PARCEL 1 had copious amounts of clear tape on its seams, had a handwritten label, and did not contain a business account number. SUBJECT PARCEL 1 was addressed to "Mia Tafoya, 4030 B St, Lincoln NEB 68510," with a return address of "Uncle Macley Tafoya, 3663 East Guasti Road, Ontario CA. 97161." On March 5, 2025, I and other law enforcement officers opened SUBJECT PARCEL 1 pursuant to a federal search warrant issued by the Honorable Jean Rosenbluth, U.S. Magistrate Judge, on March 5, 2025, in case number 2:25-MJ-01184. SUBJECT PARCEL 1 contained six separate packages in brick shapes that were individually vacuum sealed, concealed in either a black marbled mailer or a white plastic mailer, and had a white powdery substance, which presumptively tested positive for Cocaine. The suspected narcotics and packaging were submitted to the USPIS Forensic Laboratory for chemical testing and fingerprint analysis.

13. According to a USPIS Forensic Laboratory report dated April 29, 2025, SUBJECT PARCEL 1 contained approximately 6016.3 ± 2.4 grams of pure Cocaine.

B.  **USPS RECORDS SHOW THAT 16 PARCELS WERE SENT TO THE SAME ADDRESS IN LINCOLN, NEBRASKA BETWEEN SEPTEMBER 9, 2024 AND FEBRUARY 26, 2025**

14. After reviewing USPS business records, I learned that between September 9, 2024, and February 26, 2025, sixteen parcels were mailed from either San Bernardino County or Imperial County to Lincoln, Nebraska, and were addressed to 4030 B St, Lincoln, Nebraska 68510, which is the same destination as SUBJECT PARCEL 1. The postage for all sixteen parcels was paid for in cash. Based on USPS records, the packages were also of similar shape, weight, and size as SUBJECT PARCEL 1. Based on the similarity in shape, weight, and size of the packages, the fact that they were paid for in cash, and the fact that the sixteen parcels were sent to the same address as SUBJECT PARCEL 1, I believe that these sixteen parcels may have contained illicit narcotics.

C.  **Surveillance Video Captured SPAULDING Mailing SUBJECT PARCEL 1**

15. Upon reviewing USPS business records, I learned that SUBJECT PARCEL 1 was mailed on February 26, 2025, at approximately 10:16 a.m., from the Rancho Cucamonga Post Office located at 10950 Arrow Route, Rancho Cucamonga, California 91729. On March 7, 2025, I obtained and reviewed surveillance video footage from the Rancho Cucamonga Post Office during the

date and time that SUBJECT PARCEL 1 had been mailed. The surveillance footage[1] showed the following:

      a. A black male adult, later identified as SPAULDING, entered the Rancho Cucamonga Post Office wearing all black clothing carrying what appeared to be SUBJECT PARCEL 1 and a black sack. SPAULDING dropped the black sack on the ground and left it in the lobby area. SPAULDING placed SUBJECT PARCEL 1 on the ground to hold his place in line while he filled out a USPS express label with address information.

      b. SPAULDING waited in line until the USPS clerk assisted him. SPAULDING placed SUBJECT PARCEL 1 on the counter and gave the USPS clerk the USPS express label. SPAULDING paid cash for the shipping fee and exited the post office.

      D. **Identification of SPAULDING**

16. SUBJECT PARCEL 1 was addressed to "4030 B Street., Lincoln, Nebraska 68510." A search of CLEAR, a public information database used by law enforcement that provides names, addresses, telephone numbers, and other identifying information, revealed that Tommy SPAULDING, with a specific Arizona driver's license number and birth date, was associated with "4030 B St Lincoln, NE 68510" from June 2024 to August 2024. I obtained and compared a Department of Motor Vehicle ("DMV") photograph from Arizona's Department of Public Safety for SPAULDING. I compared the appearance of the person in the

---

[1] The video surveillance footage recorded on the digital video recorder was approximately 8 minutes behind the live real time based on the video's time stamp.

DMV photograph to that of the person in the Rancho Cucamonga Post Office surveillance video from February 26, 2025, and I believe they are images of the same person.

### E. SPAULDING's Fingerprints Found on SUBJECT PARCEL 1

17. According to a USPIS Forensic Laboratory report dated May 2, 2025, twelve latent fingerprints were recovered from SUBJECT PARCEL 1's exterior. Six latent fingerprints from the exterior pieces of Priority Mail Flat Rate boxes and brown parcel boxes used as inner packaging and two latent fingerprints from the adhesive side of a piece of adhesive paper removed from a vacuum sealed bag. The twelve latent fingerprints were compared to known fingerprints in FBI's fingerprint database and determined, with a reasonable degree of scientific certainty, to be a match to SPAULDING's fingerprints.

### F. Inspectors Seize $47,500

18. On or before March 3, 2025, I was alerted to USPS Priority Mail Express parcel with tracking number ER 140 787 328 US (hereinafter referred to as "SUBJECT PARCEL 2") based on an analysis of USPS business records, namely, as described further below, the same IP address was using a USPS website to track SUBJECT PARCEL 1 and SUBJECT PARCEL 2.

19. I intercepted SUBJECT PARCEL 2 and examined it. SUBJECT PARCEL 2 is a brown, large-sized USPS Ready Post cardboard box addressed to "Antonio Saldana, 1130 Rosas St, #5D, Calexico CA 92231." The return address listed on SUBJECT PARCEL 2 is "David Saldana, 811 N. 9th Plaza #16, Omaha Neb 68114." SUBJECT PARCEL 2 was postmarked on February 25, 2025, in the

68022 ZIP code.  SUBJECT PARCEL 2 was mailed from the Elkhorn, Nebraska Post Office.  Based on a google search, Elkhorn is a town about 47 miles southwest of Lincoln, where SUBJECT PARCEL 1 was mailed to.[2]  SUBJECT PARCEL 2 was a USPS Priority Mail Express parcel without a business account number, had copious amounts of clear tape around its seams, and had a handwritten label.

    20.  On or about March 5, 2025, law enforcement officers and I opened SUBJECT PARCEL 2 pursuant to a federal search warrant issued by the Honorable Karen E. Scott, U.S. Magistrate Judge on March 5, 2025, in case number 8:25-MJ-00157.  Upon opening SUBJECT PARCEL 2, I discovered $47,500 in U.S. currency in ten separate bundles held together by rubber bands and concealed in clear vacuum sealed bags, black marble envelopes,[3] red bubble wrap, two USPS mailing envelopes, clear tape, two USPS Flat Rate envelopes, two large brown Ready Post padded envelopes, and white packing peanuts.  The copious packing materials are indicia of drug trafficking because drug traffickers often attempt to conceal the odors emitting from a controlled substance from a drug detection canine.

    21.  The destination address for SUBJECT PARCEL 2 was "Antonio Saldana, 1130 Rosas St, #5D, Calexico CA 92231."

---

[2] Based on my training and experience, drug traffickers will often mail parcels containing drug or drug proceeds at different post offices to avoid law enforcement detection and further themselves from the zip code they reside in.
[3] The black marble envelopes were consistent with the envelopes concealing bricks of Cocaine from SUBJECT PARCEL 1.

Through law enforcement deconfliction databases, I located USPIS case number 4296761-PMN, which involved a Salazar Saldana ("SALDANA"), who was identified as a suspected shipper of USPS Priority Mail parcel 9505 5128 5867 3240 6687 83, which contained approximately 4,534.5 grams of suspected Methamphetamine. That parcel was shipped from the El Centro, California Post Office on August 28, 2023. The database also showed that SALDANA was associated with 1130 Rosas St, #5D, Calexico, California 92231. Other documents in this case file from the Department of Homeland Security (HSI) revealed that in April 2024, SALDANA worked with couriers to send narcotics parcels through the mail (USPS) from the Imperial Valley, specifically Calexico and El Centro, in California.

### G.  SPAULDING Tracks SUBJECT PARCELS 1 & 2

22.  USPS offers customers the ability to track the status of certain packages either online or via telephone. Customers can also use the USPS mobile application or contact customer service by phone for tracking information. After reviewing USPS records, I determined that an Internet Protocol address ("IP address")[4] was used to track the location of SUBJECT PARCEL 1 and

---

[4] "Internet Protocol" is the primary protocol upon which the Internet is based. IP allows a packet of information to travel through multiple networks (groups of linked computers) on the way to its ultimate destination. An IP address refers to a unique numeric or alphanumeric address used to connect to the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a device every time it accesses the Internet, or "static," meaning an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. There are two versions of

SUBJECT PARCEL 2.  On March 12, 2025, that IP address was \*\*\*\*:\*\*\*\*:\*\*\*\*:\*\*\*\*:\*\*\*\*:\*\*\*\*:59ae:2057 (the "IP 59ae:2057"), which was owned by Verizon Wireless.  According to Verizon records dated April 7, 2025, the subscriber for the IP 59ae:2057 is Sontwanic Walker, phone number ending in 7442 ("number ending in 7442"), with service at 1109 N 7th St, Apt 1-1/2, Springfield, IL.

    23.  An inquiry of multiple law enforcement databases, including CLEAR, TLO, and Cellhawk, associates the number ending in 7442 to SPAULDING with an address of 5750 M St Lincoln, NE 68510.  CLEAR also associates SPAULDING to the number ending in 7442.  Based on my training and experience, drug traffickers

---

IP addresses: IPv4 and IPv6.  IPv4 is the most widely used IP, and uses four groups of numbers separated by periods in a 32-bit address scheme (e.g., 121.56.97.178).  IPv6 uses colons to separate eight alphanumeric groups (e.g., 2001:0:1760:e3e7:1858:2cea:d075:6c4c).  In a simple example, one computer in a home may connect directly to the Internet with an IP address assigned by an ISP.  What is more typical is that one home may connect multiple digital devices to the internet simultaneously, including laptops, tablets, smart phones, smart televisions, and gaming systems.  Because the home subscriber typically only has one Internet connection and is only assigned one IP address at a time by their ISP, multiple devices in a home connect to the Internet via a router or hub.  The devices connect to the router or hub, and the hub connects to the Internet.  Internet activity from every device attached to the router or hub is using the same external IP address assigned by the ISP.  The router or hub "routes" Internet traffic so that it reaches the proper device.  Most ISPs control a range of IP addresses.  Most ISPs maintain records of which subscriber was assigned to which IP address during an online session.

will often use phone lines with fictious subscriber information to further avoid detection by law enforcement.

24. After reviewing USPS records, I determined that a second IP address was used several times to track the location of SUBJECT PARCEL 1 and SUBJECT PARCEL 2. That IP address was \*\*\*.\*\*\*.73.214, which was owned by Allo Communications. According to Allo Communications records dated May 6, 2025, the subscriber is Sontwanic Walker, phone number ending in 7399, with a service address of 141 S 90th Street, Apartment 429, Lincoln, NE 68520.

25. On April 23, 2025, I obtained a real time location tracking (commonly referred to as "pings") search warrant for the number ending in 7442, which was authorized by the Honorable Judge John Tomberlin, Superior Court of California, County of San Bernardino, in case number 000172998.

26. Location data obtained from the Real Time Location Data search warrant showed the number ending in 7442 location data around the Lincoln, Nebraska area. Between April 23, 2025, and May 7, 2025, the location data showed the number ending in 7442 was within 150-250 meters of the building at 141 S 90th Street, Lincoln, Nebraska 68520, several times a day. Open-source research indicates that 141 S 90th Street is part of The Flats at Shadow Creek, an apartment complex (i.e., the same apartment the Allo Communications subscriber information came back to).

27. Additionally, analysis of call detail records from the number ending in 7442 I reviewed, revealed communications with

phone number ending in 4237 on April 25 and 26, 2025. Multiple law enforcement databases associate phone number ending in 4237 to Jose Antonio Salazar SALDANA.

28. On May 13, 2025, at approximately 2:34 p.m. CST, members of the Contraband, Interdiction, and Investigations team of the Nebraska Division conducted surveillance at the 141 S 90th Street, Lincoln, Nebraska 68520. Law enforcement officers saw a newer model white Cadillac Escalade, bearing Nebraska license plate AWS795, enter the Flats at Shadow Creek, and drive toward the apartment building where the apartment is located. State of Nebraska vehicle registration information identified the vehicle as a white 2019 Cadillac Escalade, registered to Megan Tafoya, 4030 B Street, Lincoln, Nebraska 68510, the same address which was the intended destination of SUBJECT PARCEL 1. Law enforcement officers saw the white Cadillac parked on the west side of the building at 141 S. 90th Street, Lincoln, Nebraska, and saw a black male, wearing a black baseball cap, a black shirt, and dark pants, standing near the front driver's side door. This person matched the description of SPAULDING. At approximately 3:00 p.m. CST, a review of the location data for the number ending in 7442 showed the device within a 246-meter radius of the building at 141 S 90th Street, Lincoln, Nebraska 68520.

    H.    **SPAULDING Mails More Than 9 Kilos of Suspected Methamphetamine and 7 Kilos of Suspected Fentanyl**

29. While reviewing the real time location data for the number ending in 7442, on May 16, 2025, at approximately 5:15

a.m., the device traveled from Eppley Airfield in Omaha, Nebraska, to Phoenix Sky Harbor International Airport, then from Phoenix to San Diego International Airport.

30. Additional location data showed the number ending in 7442 was in the vicinity of El Centro, Calexico, and Imperial, California until May 18, 2025.

31. On May 16, 2025, Special Agent (SA) David Palmer with Homeland Security Investigations (HSI) in Calexico, California, told me the following information:

    a. On May 16, 2025, at approximately 1:55 p.m., law enforcement officers initiated surveillance on SALDANA operating a white Toyota Tundra. At approximately 2:15 p.m., law enforcement observed SALDANA on Cole Road in Calexico, California, operating the white Toyota Tundra with a person who appeared to be SPAULDING as the sole passenger in the vehicle. A law enforcement officer conducting surveillance saw the white Toyota Tundra drive to CC Transport, located at 598 W Cole Road in Calexico, and observed SALDANA and SPAULDING go to a Conex box.

32. On May 17, 2025, at approximately 10:30 a.m., the number ending in 7442 was in close proximity to the El Centro Post Office, located at 1598 Main Street, El Centro, California 92243. With assistance from USPIS CI2 Investigative Support Section, Investigative Support Specialist Tavis Dahmer, real time video surveillance footage was monitored remotely. ISS Dahmer identified SPAULDING enter the El Centro Post Office. ISS Dahmer sent me a still photograph from the video

surveillance footage of the individual who he believed was SPAULDING and I agreed; the photograph showed SPAULDING standing in line at the El Centro Post Office with three large parcels. ISS Dahmer told me that SPAULDING shipped three parcels.

33. I intercepted USPS Priority Mail parcel with tracking number 9505 5128 5868 5137 0323 62 (hereinafter referred to as "SUBJECT PARCEL 3"), USPS Priority Mail parcel with tracking number 9505 5128 5868 5137 0323 86 (hereinafter referred to as "SUBJECT PARCEL 4") and USPS Priority Mail parcel with tracking number 9505 5128 5868 5137 0324 09 (hereinafter referred to as "SUBJECT PARCEL 5") at the El Centro Post Office.

34. SUBJECT PARCELs 3, 4, and 5 had the same listed recipient and return address information. SUBJECT PARCEL 3, 4, and 5 were all addressed to "Kayla Bland, 4231 Industrial AVE., Lincoln, NE 68504." The return address listed is "Willie Bland, 3105 S. Dogwood Rd., El Centro CA 92243."

35. On or about May 22, 2025, law enforcement officers and I opened SUBJECT PARCELS 3, 4, and 5 pursuant to a federal search warrant issued by the Honorable Sheri Pym, U.S. Magistrate Judge, on May 22, 2025, in case number 5:25-MJ-00353.

    a. SUBJECT PARCEL 3 contained approximately 1,004.5 grams of Fentanyl and approximately 3,313.6 grams of Methamphetamine. The suspected Fentanyl and Methamphetamine were concealed in black marbled design and one woodgrain plastic mailers.

    b. SUBJECT PARCEL 4 contained approximately 972.2 grams of Fentanyl (4-ANPP, Tramadol), 1,996.3 grams of Fentanyl

(4-ANPP, BTMPS), and approximately 2,006.0 grams of Methamphetamine.

      c.    SUBJECT PARCEL 5 contained approximately 3,974.6 of Methamphetamine.

36. On or about May 17, 2025, I obtained and reviewed surveillance video footage from the El Centro Post Office from the date and time when SUBJECT PARCELS 3, 4, and 5 were mailed. The surveillance footage showed the following:

      a.    At approximately 10:25 a.m., SPAULDING arrived at the front of the El Centro Post Office in a black and orange taxicab. SPAULDING exited the rear passenger side door and removed a large black sack from the trunk. SPAULDING entered the post office carrying the black sack. SPAULDING removed what appeared to be SUBJECT PARCELS 3, 4, and 5 from the black sack and waited in line. SPAULDING then placed SUBJECT PARCELS 3, 4, and 5 on the counter, and he paid for the shipping in cash.

    **I.**    **SPAULDING'S Criminal History**

37. On March 12, 2025, I reviewed a criminal history report for SPAULDING and saw that SPAULDING has the following convictions:

      a.    In the state of Illinois, he sustained a felony conviction on February 13, 2003, for aggravated unlawful use of a weapon in violation of 720 Illinois Complied Statues (ILCD) 5.0/24-1.6-A-1.

      b.    In the state of Iowa, he sustained a felony conviction on April 15, 2002, for possession of Cocaine with intent to deliver, in violation of Iowa Statute IA124-401-1C.

    c. In the state of Nebraska, he sustained a felony conviction on October 10, 2002, for intent to distribute a controlled substance, in violation of Nebraska Statute charge 3557.

## V. CONCLUSION

  38. For all of the reasons described above, there is probable cause to believe that SPAULDING committed a violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) (distribution of 5 kilograms or more of Cocaine) on or about February 26, 2025.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 12th day of June, 2025.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE